Titone, J.
(dissenting). By holding that defendant landlord’s right to send termination notices was extinguished by plaintiff’s payment of past-due rents, the majority has rewritten the parties’ agreement and, in effect, created a new cure period wholly outside the written understanding of the parties. Because this decision injects a level of uncertainty into the law governing landlord-tenant relations, I respectfully dissent.
*1028 The majority’s holding rests on the fact that at the time plaintiff paid defendant the past-due rents it had improperly withheld, the leases had not. yet been terminated. As the majority points out, termination of the leases could be effectuated only by the issuance of written notices specifying the nature of the defaults and setting forth the dates on which the leases would expire. Since no such notices had been issued, the lease remained in effect.
The issue in this case, however, is not whether the leases had actually been terminated prior to the tenant’s payment of back rent, but rather whether the landlord’s right to terminate could be extinguished by such tardy payment. That question may be answered affirmatively only if some lease provision — or legal tenet — gave plaintiff a right to cure a default in rent payment. Absent a source for a right to cure, plaintiff’s defaults were irreversible and defendant had the right to proceed with its lease remedies regardless of plaintiff’s subsequent actions.
Neither of the leases in issue provide a specific source for a right to remedy a default in rent payments, and the majority has not suggested otherwise. Both of the leases provided that "if default shall be made in the due and punctual payment of any net rent * * * and such default shall continue for a period of 5 business days * * * then and in any such event Landlord at any time thereafter may give written notice to Tenant * * * and upon the date specified in such notice * * * this Lease shall expire and terminate” (emphasis supplied). No further opportunity for "cure” beyond the five-day grace period specified in this paragraph was provided.
To be sure, the leases made the formal issuance of a notice of default a condition precedent to the lease’s termination. However, this procedural requirement should not be confused with the landlord’s substantive right to terminate the tenancies.[1] Under the plain language of the leases, this right became fixed and unconditional after the tenant defaulted and failed to remedy the default during the five-day grace period. *1029 Thereafter, defendant was privileged to issue notices of default, and thereby terminate plaintiffs tenancies "at any time.”
Under this analysis, it makes no difference that "the rental delinquencies were remedied” prior to the service of the default notices (majority mem, at 1027). Under the terms of the lease, plaintiffs breaches were complete long before such payment was made. In the absence of a cure provision, those breaches could no longer be "remedied,” and it is irrelevant that "there were no outstanding rental defaults to which the notices could apply.” The notices were properly applicable to the completed default resulting from plaintiffs failure to pay rent within the required five-day grace period.[2]
The majority’s ultimate conclusion — that the notices were ineffective because the breaches had previously been remedied —can be reached only by reading into the parties’ leases a post-grace-period right to cure that neither party contemplated at the time the leases were executed.[3] In effect, the majority has held that, regardless of the lease provisions, the law will imply a right to cure that extends until such time as the landlord acts upon the tenant’s default. I cannot agree to such a result, however, since it violates the well-established principle that, absent a showing of fraud, mutual mistake or other acceptable basis of reformation, the court is powerless to read into a lease a right to cure beyond the rights specified in the lease itself (First Natl. Stores v Yellowstone Shopping Center, 21 NY2d 630, 637; cf., Mann Theatres Corp. v Mid-Island Shopping Plaza Co., 94 AD2d 466, affd 62 NY2d 930 [right to cure created through the parties’ subsequent writings]; Wuertz v Cowne, 65 AD2d 528 [same]).
Equally flawed is the majority’s conclusion that defendant’s *1030 acceptance of past-due rent constituted a waiver of its already vested right to issue default notices and terminate the leases. First, apart from a cryptic reference to "the circumstances present here” (majority mem, at 1027), the majority does not explain why the leases’ "nonwaiver” clauses do not foreclose a finding of waiver (cf., Jefpaul Garage Corp. v Presbyterian Hosp., 61 NY2d 442). Second, even assuming that the "non-waiver clauses” are ineffective in this situation, the majority’s conclusion ignores the plain terms of the court-ordered stipulation, under which the payments were made and accepted. The stipulation provided that "neither the plaintiff nor the defendant have waived the respective rights that they have asserted in their respective motions, including the landlord’s claim that it is entitled to serve a notice terminating the leases” (emphasis supplied). In view of this clear language, treating defendant’s acceptance of past-due rents as a waiver of its right to terminate the leases by sending notices of default is patently unfair (cf., Jefpaul Garage Corp. v Presbyterian Hosp., supra, at 446-447).[4]
In sum, neither defendant’s acceptance of past-due rents nor its delay in sending notices of default divested defendant of its absolute right under the terms of the leases to hold plaintiff to its defaults. Accordingly, I would reverse the order of the Appellate Division and reinstate the judgments at Special Term, which declared that defendant had a right to terminate plaintiff’s leases.
Chief Judge Wachtler and Judges Simons, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion; Judge Kaye taking no part.
*1031 Order affirmed, with costs, in a memorandum.

. The notice provisions of the leases,- which required that the date specified for lease termination be no less than five days after the date of the notice (see, majority mem, at 1026), were apparently designed to ensure the tenant at least five days’ notice of termination, presumably so that the tenant could make arrangements to vacate the premises in an orderly fashion. In contrast, the entirely separate reference in the leases to a continuance of the default "for a period of 5 business days” was evidently intended to afford the tenant a short grace period for paying its rent.

. The majority begs the question when it posits that before the default notices were sent "the rental delinquencies were remedied” (majority mem, at 1027), "there were no outstanding rental defaults” (id.) and the tenant had "removed any ground for implementing the conditional limitations” (id.). All of those conclusions rest on an assumption that the tenant had a right to cure — an assumption which I find unjustifiable in light of the leases’ language.

. The majority’s holding assumes that the parties’ agreement was as follows: "[I]f default shall be made in the due and punctual payment of any net rent * * * and such default shall continue for a period of 5 business days * * * then and in any such event Landlord at any time thereafter may give written notice to Tenant * * * and upon the date specified in such notice * * * this Lease shall expire and terminate unless the tenant has previously remedied its default” (emphasized words added).

. There is no support for the majority’s assertion that the "reserved contentions” referred to in the parties’ stipulation related only to the question whether the tenant had an implied right to cure that could provide a predicate for a Yellowstone injunction (majority mem, at 1027). As the above-quoted language makes clear, the parties reserved all of "the respective rights that they have asserted in their respective motions”. While the plaintiff tenant’s motion may have been confined to requests for injunctive relief, the defendant landlord’s cross-motions for summary judgment clearly encompassed the contentions that (1) the tenant "ha[d] breached the lease[s]”; (2) "there is no curative period for the correction of such admitted failure to pay”; and (3) "the defendant landlord is entitled to take [the] steps permitted by the lease * * * to declare the lease terminated” (defendant’s notice of cross motion). I am at a loss to understand why the majority has not treated the stipulation reserving rights as extending these contentions.